## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re, | Case No. 13-01150-dd |
| Jesse Derek Evatt, | Chapter 7 |
| | **ORDER DENYING MOTION TO DISMISS** |
| Debtor. | |

This matter is before the Court on a motion pursuant to 11 U.S.C. §§ 707(a) and (b)(3) to dismiss the chapter 7 bankruptcy case of the debtor, Jesse Derek Evatt ("Debtor"). Barry W. Lipsitz and Naomi Donner (collectively, "Movants") filed the motion to dismiss on June 4, 2013. Debtor responded in opposition. The Court held a hearing on July 15, 2013. After careful consideration of the arguments of counsel, evidence submitted, and applicable law, the Court issues the following findings of fact and conclusions of law under Federal Rule of Civil Procedure 52(a), made applicable by Federal Rule of Bankruptcy Procedure 9014.[1]

### FINDINGS OF FACT

1. On October 9, 2009, Movants entered into a contract with Sivatt Homes, Inc., Jesse B. Evatte, and Debtor for the purchase and construction of a custom home on lot 7 in Mill Stone subdivision in Pickens County, South Carolina ("Property"). The purchase price for the Property was $187,500. April 30, 2010, was the scheduled closing date. Movants' ex. 1.

2. Debtor is listed under the name Derek J. Evatte on the contract and signed the contract as vice president of Sivatt Homes. Jesse B. Evatte, the father of Debtor, signed the contract as president of Sivatt Homes. Movants' ex. 1.

---

[1] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are also so adopted.

1

3. Debtor's father is the sole owner of Jesse Evatte Ministries, Inc., a 501(c) non-profit corporation. He determined that he could raise money for missions and ministry work through residential home construction and started doing business as Jesse Evatte Ministries, Inc. d/b/a Sivatt Homes.

4. Debtor does not have an ownership interest or voting rights in Jesse Evatte Ministries, Inc. d/b/a Sivatt Homes. He viewed the title of vice president as simply a job title.

5. Lot 7 and an adjoining lot are encumbered by a mortgage held by Mill Stone Partnership. Neither the note nor the mortgage held by Mill Stone Partnership was introduced into evidence.

6. Movants did not know about the Mill Stone Partnership mortgage at the time they entered into the contract for the purchase and construction of the Property.

7. Numerous disputes arose during construction, and the closing on the house never occurred.

8. On April 22, 2010, Debtor and his father sued Movants for breach of contract in the Court of Common Pleas for Pickens County, South Carolina. Movants answered and counterclaimed with causes of action for specific performance, breach of contract, breach of contract accompanied by fraudulent act, fraud, fraud in the inducement, unjust enrichment, constructive trust, and unfair trade practices. Debtor's ex. M.

9. By the time litigation ensued, Movants had paid approximately $130,000 toward the construction of the house.

10. During the litigation, Movants discovered that Sivatt Homes, Inc., the title holder of the Property at the time of the execution of the contract, was not a legal entity. A corrective deed was filed, naming Jesse Evatte Ministries, Inc., d/b/a Sivatt Homes on the title.

11. The parties to the state court litigation settled in May 2011. Debtor and his father executed a note in the amount of $134,752 due and payable on May 19, 2012. The note was secured by a mortgage on lots 6 and 7 in the Millstone Subdivision. Debtor and his father indicated they needed one year to sell the Property and pay the note. If the amounts due under the note were not paid by May 19, 2012, a confession of judgment in the amount of $134,752 would be filed.

12. There was no indication that Movants were unaware of the mortgage held by Mill Stone Partnership on lot 7 and the adjoining lot at the time of the May 2011 settlement. Naomi Donner testified she learned of the mortgage during the litigation and that Movants are harmed by the mortgage because Mill Stone Partnership wants them to purchase both lots plus pay interest and attorney fees.

13. Debtor also owned a company called Rockpoint, LLC.

14. In March 2012, Rockpoint, LLC received a letter indicating that its use of the name "Rockpoint" infringed on the trademark of another company and demanding that it cease using that name. Debtor's ex. C.

15. As a result, A&D Homes, LLC was set up with Debtor's non-filing spouse as the sole member.

16. Debtor's non-filing spouse is a full-time school teacher and mother of four.

17. Debtor indicates that he manages and performs contract work for A&D Homes. Debtor testified his attorney drafted a resolution that is signed by his spouse and authorizes him to sign documents on behalf of A&D Homes.

18. Debtor testified A&D Homes was set up with the non-filing spouse as the sole member based on the advice of attorneys and other business owners. Debtor's spouse does not perform any work for A&D Homes.

19. In May 2012, Rockpoint, LLC transferred approximately fourteen residential lots in the Creek Bank Commons subdivision to A&D Homes. Debtor testified he transferred the lots because of the cease and desist letter. Each lot was encumbered by a $22,000 lien held by an investor, and each lot had a tax assessed value of $18,000. Debtor's ex. E.

20. The trademark holder agreed to allow Debtor to continue using Rockpoint, LLC in connection with a rental property in Charlotte, North Carolina.

21. Debtor introduced into evidence a "Lot Release and Profit Sharing Agreement Between Deacon Investments, LLC and Rockpoint, LLC for 17 Lots at Creek Bank Commons." The Agreement states in order to repay a loan Deacon made to Rockpoint to purchase seventeen lots, Rockpoint will pay a lot release fee of $10,300 per lot. Each lot will carry a "selling price" of $22,000 and the amount above the lot release will be paid to Deacon as "profit sharing." The Agreement sets forth three scenarios for how profits from the sale of homes will be shared:

> Scenario 1: (Deacon Investments, LLC becomes the construction lender.)
> Profits from the sale of the home, less lot price ($22,000), construction costs ($57/SF) and construction interest (4%), commissions and closing costs will be shared at 75% to Deacon Investments, LLC and 25% to Rockpoint, LLC.
>
> Scenario 2: (Deacon Investments allows Rockpoint to build on lot without an initial lot release.)
> The lot "selling price" will be $24,750 at closing.
>
> Scenario 3: (Rockpoint "purchases" the lot for $22,000 and constructs the home with 3rd party funds.)
> Rockpoint keeps 100% of all the profits from the sale of the home.

Debtor's ex. B.

22. Movants assert Debtor and his father did not aggressively attempt to sell the Property between May 2011 and May 2012.

23. Naomi Donner testified the Property was not listed on the multiple listing service ("MLS") for seven months after the May 2011 settlement. Ms. Donner testified that once the Property was listed, she drove to see it, and the exterior did not appear as if the Property was being maintained.

24. Debtor testified that although the Property was not listed on the MLS for six or seven months, he had retained a realtor to sell the Property. This realtor was first speaking with investors and then people the realtor knew before listing the Property. Debtor introduced into evidence a contract dated December 20, 2011, to purchase the Property, which did not close. Debtor's ex. Q. Debtor testified there were other potential purchasers who were either unwilling to pay enough or unable to complete the purchase for various reasons. Debtor also indicated he attempted to maintain the Property during this period.

25. Because Debtor and his father defaulted on the note, Movants filed the confession of judgment on May 31, 2012.

26. Movants proceeded with supplemental proceedings in state court in November 2012.

27. Debtor and his father agreed to a deadline of December 21, 2012, to respond to certain discovery requests.

28. On February 19, 2013, an order was entered in the supplemental proceedings indicating that Debtor and his father had not provided all of the documents requested and that they had not presented "any justifiable grounds for not providing these responses." The order gave the Debtor and his father until March 1, 2013, to provide complete responses and awarded

attorney fees to Movants' counsel. The order indicated that "[t]he failure of the Plaintiffs to strictly abide by the terms of this Order will constitute contempt of court and the Court shall impose such sanctions as deemed appropriate." Movants' ex. 3.

29. Debtor testified his understanding was the documents that had not been provided were documents for Rockpoint, LLC, and he relied on the advice of counsel in not producing documents for Rockpoint. He testified his attorney told him he did not need to produce documents for Rockpoint because it was not a party to the judgment.

30. On February 27, 2013, Debtor filed his petition under chapter 7 of the Bankruptcy Code.

31. On his schedules, Debtor lists two secured creditors and indicates he intends to remain current on his payments to these creditors.

32. Debtor lists two unsecured, nonpriority claims on his schedules: a claim in the amount of $143,600 held by Movants and a claim in the amount of $13,321 for Discover credit card purchases.

33. Debtor lists no unsecured, priority claims on his schedules.

34. Debtor testified his wife did not jointly file bankruptcy because they were trying to preserve her credit.

## CONCLUSIONS OF LAW

Movants seek to dismiss Debtor's case for bad faith under 11 U.S.C. § 707(a). Section 707(a) provides that a court may dismiss a case under chapter 7 "for cause." "Bad faith is not expressly included in section 707(a)'s list of situations which constitute cause for dismissal." *In re Lloyd*, C/A No. 11-03972-DD (Bankr. D.S.C. Oct. 20, 2011). "However, courts have often

held that lack of good faith in filing a bankruptcy petition is cause for purposes of section 707(a)." *Id*; *see also Piazza v. Nueterra Healthcare Physical Therapy, LLC* (*In re Piazza*), 719 F.3d 1253, 1260-61 (11th Cir. 2013); *Perlin v. Hitachi Capital Am. Corp.* (*In re Perlin*), 497 F.3d 364, 369 (3d Cir. 2007); *Indus. Ins. Serv., Inc. v. Zick* (*In re Zick*), 931 F.2d 1124, 1126–27 (6th Cir. 1991); *McDow v. Smith*, 295 B.R. 69, 75 (E.D. Va. 2003); *In re Marino*, 388 B.R. 679, 682 (Bankr. E.D.N.C. 2008); *In re Dudley*, 405 B.R. 790, 800 (Bankr. W.D. Va. 2009). "The Court has discretion in determining whether to dismiss a debtor's case pursuant to section 707(a)." *Id.* The determination regarding whether to dismiss a case for cause under section 707(a) is based on the totality of the circumstances. *See Piazza*, 719 F.3d at 1271; *McDow*, 295 B.R. at 75; *see also In re Lombardo*, 370 B.R. 506, 511-12 (Bankr. E.D.N.Y. 2007) (stating "an inquiry into the totality of the circumstances must be conducted" and setting forth a list of factors courts have considered). Moreover, two circuit courts of appeal and one district court within the Fourth Circuit have cautioned that dismissal under section 707(a) for bad faith should be limited to "egregious cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expenditures, lavish lifestyle, and intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence." *See Perlin*, 497 F.3d at 373; *Zick*, 931 F.2d at 1129; *McDow*, 295 B.R. at 81; *see also Huckfeldt v. Huckfeldt* (*In re Huckfeldt*), 39 F.3d 829, 832 (8th Cir. 1994) (holding that dismissals for "bad faith under § 707(a) [should] be limited to extreme misconduct falling outside the purview of more specific [Bankruptcy] Code provisions, such as using bankruptcy as a 'scorched earth' tactic against a diligent creditor, or using bankruptcy as a refuge from another court's jurisdiction."). Movants bear the burden of proving cause for dismissal. *Piazza*, 719 F.3d at 1266; *In re McFadden*, 477

7

B.R. 686, 691 (Bankr. N.D. Ohio 2012); *In re Aiello*, 428 B.R. 296, 299 (Bankr. E.D.N.Y. 2010); *Lombardo*, 370 B.R. at 513.

After careful consideration of the evidence presented, this Court does not find that this case was filed in bad faith. Much of the testimony at the hearing related to the disputes that arose during the construction of the Property. However, the parties settled those disputes, and Movants have a judgment against Debtor as a result. While the conduct that gave rise to that judgment may have an impact on any discharge/dischargeability proceeding that is pursued, the evidence presented does not establish that it is of such an egregious nature as to justify dismissing Debtor's bankruptcy petition for lack of good faith. Additionally, while Movants assert that Debtor did not vigorously attempt to sell the Property during the year preceding the filing of the confession of judgment, Debtor testified that a realtor was consulted and there were several potential purchasers who were either not willing to pay enough or not able to complete the purchase. He also indicated efforts were undertaken to maintain the Property during this period of time. In the end, although more could have been done to try to sell the Property, the Court does not find Debtor's conduct to be so egregious as to support dismissing this case. With respect to the supplementary proceeding, Debtor testified he relied on the advice of counsel in not producing the documents for Rockpoint prior to the February 19, 2013 Order in the supplemental proceedings. Again, the Court does not find this conduct to be of such an egregious nature as to warrant dismissal.

With respect to the transfer of the fourteen lots to A&D Homes and the establishment of that entity under the non-filing spouse's sole ownership, Debtor provided a valid explanation for why the properties had to be transferred from Rockpoint to another entity. However, he did not provide a valid explanation for why A&D Homes was established with his spouse as the sole

member considering she performs no work for A&D Homes and Rockpoint was under Debtor's ownership. It seems likely this entity was created under the spouse's sole ownership in an attempt to shield these assets from creditors. Moreover, while the lien the investor holds on these lots exceeds their value at this time, the Court is troubled by the fact that the arrangement with the investor is such that the investor may be willing to wait until Debtor can build homes on the lots and both can profit from the sales. *See* Debtor's ex. B. These profits would be funds that could be used to pay some of the debt owed to Movants. However, based on the evidence before the Court, the reality is that the liens on these lots exceed their value, which is probably why the chapter 7 trustee did not seek to set aside the transfers, and it is speculative at this point to suggest that Debtor ultimately could profit from building on the lots. *See Aiello*, 428 B.R. at 303 ("Any interest of Debtor as a corporate officer is now known to creditors, and yet this information did not prompt the Chapter 7 Trustee to re-notice this case as an asset case. [Movant] does not assert these corporate positions are assets of meaningful value."). Therefore, while the circumstances surrounding the establishment and organization of A&D Homes may have some impact on any discharge/dischargeability action that is pursued, the facts before the Court are not so egregious as to warrant dismissal based on bad faith.

Finally, Debtor's schedules reflect few creditors in this case, as there are only two secured creditors that hold mortgages on a piece of real property in Harrisburg, North Carolina and two unsecured creditors, including Movants who are listed as being owed $143,600 and Discover Financial Services which is listed as being owed $13,321. Moreover, Debtor indicates he is current with his two secured creditors. The paucity of creditors in this case and the timing of its filing suggest Debtor filed his petition because of the large debt owed to Movants and their collection efforts. However, the testimony at the hearing indicated that Debtor's financial

troubles are not solely the result of the litigation with Movants but also the general downturn in the economic climate for builders over the last several years, as evidenced by Debtor's inability to sell the Property.  This along with the lack of evidence of prepetition conduct suggestive of bad faith, such as dilution of assets, concealment of assets, or failure to make lifestyle changes, lead the Court to conclude that this case was not filed in bad faith.[2]  *See Piazza*, 719 F.3d at 1273-74; *Perlin*, 497 F.3d at 373-75; *Aiello*, 428 B.R. at 303.

## CONCLUSION

For the reasons set forth herein, the motion to dismiss filed by Barry W. Lipsitz and Naomi Donner is denied.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**08/28/2013**



David R. Duncan
Chief US Bankruptcy Judge
District of South Carolina

Entered: 08/29/2013

---

[2] Movants also assert in their motion that this case should be dismissed under 11 U.S.C. § 707(b)(3), which states a court should consider if a petition was filed in bad faith in determining whether to dismiss a case involving "primarily consumer debts."  However, they assert no specific arguments related to section 707(b)(3) other than those advanced in connection with section 707(a), and their general theory is that this case should be dismissed because it was filed in bad faith.